IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JASAEL FIGUEROA-FIGUEROA,<br><br>Defendant | CRIMINAL NO. 18-122 (DRD) |

# REPORT AND RECOMMENDATION

Defendant Jasael Figueroa-Figueroa ("Defendant Figueroa" or "Figueroa") was charged in a six count Indictment with possession of a firearm in furtherance of a drug trafficking crime, in violation of Title 18, United States Code, Section 924(c)(1)(A)(i); possession with intent to distribute cocaine base, in violation to Title 21, United States Code, Section 841 (a)(1) and 841(b)(1)(B)(iii); possession with intent to distribute cocaine, in violation to Title 21, United States Code, Section 841 (a)(1) and (b)(1)(C); possession with intent to distribute marihuana, in violation to Title 21, United States Code, Section 841 (a)(1) and (b)(1)(D); possession of a machine gun in furtherance of a drug trafficking crime, in violation of Title 18, United States Code, 924(c)(1)(B)(ii); and illegal possession of a machine gun, in violation of Title 18, United States Code, Section 922(o) and 924 (a)(2)). (Docket No. 8).

Pending before this Court is Defendant Figueroa's "Motion to Suppress Physical Evidence and Statements" in which he moved the Court to suppress all the evidence seized from his home, from his person and his statements. Defendant Figueroa asserted the entry to his house, the search of his house, the search of his person and his arrest (all done

Case 3:18-cr-00122-DRD    Document 56    Filed 01/09/19    Page 2 of 19

United States of America v. Jasael Figueroa-Figueroa
Civil No. 18-122 (DRD)
Report and Recommendation
Page 2
_____

without a warrant) were not lawful because there was no probable cause and no exigent circumstances. (Docket No. 25).

The United States responded to the Motion to Suppress, arguing Defendant Figueroa lacked standing to question the entry and search of the house since he did not have an expectation of privacy in the place searched. The United States also argued that the police officers entered the house legally based on probable cause to arrest and exigent circumstances. The United States posited in addition that Defendant Figueroa gave consent to search. (Docket No. 41).

The Motion to Suppress filed by Defendant Figueroa was referred to the undersigned for Report and Recommendation. (Docket Nos. 35 and 36).

On November 7, 2018, the suppression hearing was held. The matter of standing was addressed first, and Defendant presented the testimony of Coralis Santiago Colón ("Santiago") because the burden is on Defendant. Direct and cross examination conducted. A verbal ruling was made that Defendant Figueroa had established standing with the testimony of Santiago. The burden then turned to the United States which presented the testimony of PRPD Agent Carlos Bari Martínez ("PRPO Bari") and PRPO Alexander González Santiago ("PRPO González"). Direct and cross examination conducted. Several Exhibits were admitted and presented into evidence. Defendant Figueroa did not take the stand on his behalf. (Docket No. 47).

On January 8, 2019, post-hearing briefs were filed by the parties. (Docket Nos. 54 and 55).

Case 3:18-cr-00122-DRD   Document 56   Filed 01/09/19   Page 3 of 19

United States of America v. Jasael Figueroa-Figueroa
Civil No. 18-122 (DRD)
Report and Recommendation
Page 3
_____

## LEGAL ANALYSIS ON STANDING

The United States originally claimed Defendant Figueroa did not have standing to challenge the admission of the evidence seized on February 23, 2018 and any other evidence derived therefrom. The United States averred Defendant Figueroa had no legitimate expectation of privacy in the house searched which had no indicia that anyone lived in it. The house had no furniture, no clothes in the closets, and no food or running water. The United States claimed Defendant Figueroa lacked standing to assert a violation of his rights. (Docket No. 41, pages 2-5).

Later, the government informed the Court in its post-hearing brief that it did not object to the Court's oral ruling that Defendant had standing to seek suppression of the evidence seized. (Docket No. 54, p. 3). However, in an abundance of caution, the issue of standing is briefly discussed herein.

Defendant Figueroa presented the testimony of his wife (Santiag0) at the suppression hearing to establish standing. The United States did not present any evidence on the standing issue. After hearing the testimony of Santiago, and assessing her demeanor and credibility, the Court orally found that Defendant Figueroa had standing to challenge the admissibility of the evidence seized via a motion to suppress. Defendant Figueroa met his burden of proving he had a legitimate expectation of privacy in the house and in relation to the items seized.

The concept of standing under the Fourth Amendment refers to the defendant's burden of proving a legitimate expectation of privacy as a prerequisite to challenge unlawful police conduct. United States v. Sánchez, 943 F.2d 110, 113 n. 1 (1st Cir. 1991). "We therefore use the term 'standing' somewhat imprecisely to refer to this threshold

Case 3:18-cr-00122-DRD   Document 56   Filed 01/09/19   Page 4 of 19

United States of America v. Jasael Figueroa-Figueroa
Civil No. 18-122 (DRD)
Report and Recommendation
Page 4
_____

substantive determination." Id.  See United States v. Cruz Jiménez, 894 F.2d 1, 5 n. 1 (1st Cir. 1990).

The term "standing" is also used as a shorthand method of referring to the issue of whether the defendant's own Fourth Amendment interests were implicated by the challenged Governmental action. "Technically, the concept of 'standing' has not had a place in Fourth Amendment jurisprudence for more than a decade, since the Supreme Court in Rakas v. Illinois, 439 U.S. 128, 99 S.Ct. 421 (1978), indicated that matters of standing in the context of searches and seizures actually involved substantive Fourth Amendment law." See Sánchez, 943 F.2d at 113 n. 1; see also United States v. Kimball, 25 F.3d 1, 5 (1st Cir. 1994).

A defendant has the burden of establishing standing.  Rakas, 493 U.S. at 138-48; United States v. Melucci, 888 F.2d 200, 201 (1st Cir. 1989); United States v. Hershenow, 680 F.2d 847, 855 (1st Cir. 1982).  Defendant's burden of showing that he had reasonable expectation of privacy in the area searched and in relation to the items seized to establish standing for suppression challenge must be carried at the time of the pretrial hearing and on the record compiled at that hearing. United States v. Aguirre, 839 F.2d 854, 856 (1st Cir. 1988); and see United States v. Mancini, 8 F.3d 104, 107 (1st Cir. 1993) (before embarking upon the merits of a suppression challenge, a criminal defendant must show that he had a reasonable expectation of privacy in the area searched and in relation to the items seized).

The Court of Appeals for the First Circuit has identified the sort of factors which are pertinent to this threshold inquiry, to wit: ownership, possession, and/or control; historical use of the property searched or the thing seized; ability to regulate access; the

totality of the surrounding circumstances; the existence or nonexistence of a subjective anticipation of privacy; and the objective reasonableness of such an expectancy under the facts of a given case. Aguirre, 839 F.2d at 857; *see, e.g.*, United States v. Gómez, 770 F.2d 251, 254 (1st Cir. 1985); United States v. Lochan, 674 F.2d 960, 965 (1st Cir. 1982).[1] The Court looks to whether the individual thought of the place (or the article) as a private one and treated it as such. If the movant satisfies the Court on this score, then the Court looks to whether the individual's expectation of confidentiality was justifiable under the attendant circumstances. Whatever facts may shed light upon either step of this two-tier inquiry may be weighed in the balance. Aguirre, 839 F.2d at 857.

While property ownership is clearly a factor to be considered in determining whether an individual's Fourth Amendment rights have been violated, United States v. Salvucci, 448 U.S. 83, 91, 100 S.Ct. 2547, 2553 (1980), ownership alone is not dispositive. Rawlings v. Kentucky, 448 U.S. 98, 105, 100 S.Ct. 2556, 2561-62 (1980). Courts must look to the totality of the circumstances, and "any precautions taken to exclude others or otherwise maintain a privacy interest will heighten the legitimate expectation of privacy in the protected area." United States v. One 1977 Mercedes Benz, 708 F.2d 444, 449 (9th Cir. 1983).

Santiago testified at the suppression hearing as to the standing issue only. Santiago stated that she is the wife of Defendant Figueroa and has three minor boys with him. See Exhibits 15, 16 and 17. Santiago currently lives in Calle #16, Valle Seco Sector, San José

---

[1] The factors that a court must take into account prior to deciding whether the defendant requesting the suppression had the expectation of privacy that grants him/her the standing to request the suppression include: 1) legitimate presence in the area searched; 2) prior use of the area searched or the property seized; 3) possession or ownership of the area searched or the property seized; 4) ability to control or exclude other's use of the property; and 5) a subjective expectation of privacy. Lochan, 674 F.2d at 965.

Ward in Toa Baja, Puerto Rico with her three kids. See Exhibits A and A-1. Santiago has owned the house for eight months since December 2017. She bought the house from Cristobal Cruz Figueroa, a cousin of Defendant Figueroa. She started living in said house in March 2018 because prior to that, she and Defendant Figueroa were fixing the house. The house was flooded after the passing of Hurricane María and suffered many damages including the roof which was ripped off. The damage to the different areas of the house can be seen in Exhibits A-3, A-4, A-5, and A-6 which are photographs taken in February 2018. Exhibit A-7 shows Defendant Figueroa on the roof of the house doing repair work prior to his arrest in this case. Exhibits A-8, A-9 and A-10, A-11, A-12 and A-14 show areas of the house as repair work was being done. Exhibit A-13 shows a room in the house already repaired and as it currently looks.

The photographs in Exhibits A-1 through A-14 are of the house where Defendant Figueroa was arrested. Defendant Figueroa had a key to the house when he was arrested. See Exhibits A-19 and A-20.

On cross-examination, Santiago clarified that she moved to the house in March or April 2018. Santiago stated that the house had water and power when she bought it. However, she has never paid for said services. Her neighbors do not pay for utilities either. Santiago paid $10,000.00 in cash for the house. No contract was signed when she bought the house.

In sum, based on Santiago's testimony, which is uncontested, and under the totality of circumstances, the Court concludes that Defendant Figueroa met his burden that he had an expectation of privacy in the house at issue. The house (which Defendant's wife had bought) was being fixed and renovated prior to Defendant Figueroa's arrest. The

Case 3:18-cr-00122-DRD   Document 56   Filed 01/09/19   Page 7 of 19

United States of America v. Jasael Figueroa-Figueroa
Civil No. 18-122 (DRD)
Report and Recommendation
Page 7
_____

house was still being renovated when Defendant Figueroa was arrested in the house. Defendant Figueroa had a key to the house when he was arrested. Santiago moved to the house after Defendant was arrested and did not move before because it was being repaired. Thus, Defendant established with the testimony of Santiago that: 1) he had a legitimate presence in the area searched; 2) prior use of the area searched or the property seized; 3) possession or ownership of the area searched or the property seized; 4) ability to control or exclude other's use of the property; and 5) a subjective expectation of privacy. Lochan, 674 F.2d at 965.

In sum, Defendant Figueroa has standing to challenge the admission of illegal items seized under the totality of the circumstances and the evidence before the Court. Moreover, Defendant's expectation of confidentiality was justifiable under the attendant circumstances. Accordingly, Defendant Figueroa has met the threshold established in Aguirre and Lochan.

## FINDINGS OF FACT

Pursuant to the testimonies of PRPO Bari and PRPO González, and after assessing their demeanor on the stand and their credibility, the pertinent facts summarized below are uncontested.

Testimony of PRPO Bari:

On February 23, 2018, PRPO Bari was on duty at the Bayamón Stolen Vehicles' Division. His duties that day were part of a work plan to attack crime in high crime areas. On that day, PRPO Bari was assigned to San José Ward in Toa Baja and he went to that area at about 3:00 pm. PRPO Bari was with fellow officers Sgt. Felix Rivera ("Sgt. Rivera") and Alexander González. They were doing preventive rounds and, while at 16th Street

Case 3:18-cr-00122-DRD   Document 56   Filed 01/09/19   Page 8 of 19

United States of America v. Jasael Figueroa-Figueroa
Civil No. 18-122 (DRD)
Report and Recommendation
Page 8
_____

known as Valle Seco, he observed a Toyota Corolla, black, four doors with license plate IRS-091. See Exhibits 3, 4, 5, 5-1, 5-2, 5-3 and 6. PRPO Bari then reported the license plate through a portable radio to the police command center. The license plate came back with a lien that the vehicle was stolen. PRPO Bari ran the license plate because, some weeks before, a message had been sent by the command center that some individuals in a black Toyota Corolla, license plate ending in 091, were committing crimes at shopping centers in the area. Sgt. Rivera told PRPO Bari to wait for a marked police unit to arrive. PRPO Bari then started to do a visual inspection of the Toyota Corolla and he noticed that the locks nor the ignition were forced. That was suspicious in PRPO Bari's experience because it meant that someone had the key of the stolen vehicle. PRPO Bari then started to canvass the area by going house to house looking for the owner or the possessor of the keys of the stolen vehicle. No one had any information about the vehicle.

Then, PRPO Bari (who was in civilian clothing and wearing his badge on his neck) approached a property to the far-left which door was ajar. See Exhibit 7. PRPO Bari said "good afternoon, it is the police." A male (later identified as Defendant Figueroa) came out from the right side and stood in front of the glass door. See Exhibit 8 and 8-1. PRPO Bari observed that Defendant Figueroa had a black pistol on his waistband. PRPO Bari asked Defendant Figueroa if he had a license to carry the firearm. Defendant Figueroa said he did not have a license. PRPO Bari then took away the firearm from Defendant and placed it on his waistband. PRPO Bari arrested Defendant Figueroa, patted him down and gave him the Miranda warnings. PRPO Bari made sure that Defendant Figueroa understood the Miranda warnings by asking him if he understood them. Defendant answered he did understand them. PRPO Bari asked Defendant if he was alone in the

Case 3:18-cr-00122-DRD  Document 56  Filed 01/09/19  Page 9 of 19

United States of America v. Jasael Figueroa-Figueroa
Civil No. 18-122 (DRD)
Report and Recommendation
Page 9
_____

house due to safety reasons. Defendant Figueroa said there was no one else in the house. PRPO Bari asked Defendant if he had more firearms and he said he had more firearms. PRPO Bari asked where the firearms were, and Defendant indicated they were in a bedroom. PRPO Bari asked Defendant if he would agree voluntarily to show him where the firearms where and Defendant consented. PRPO Bari then went with Defendant down the hallway to the bedroom on the left with the flash light of his cellular phone because it was dark. Defendant showed PRPO Bari an armoire inside the bedroom. Drugs, paraphernalia and bullets were found in the drawers of the armoire. Three bags were also found. The blue and black bags were in the bedroom and the green bag was inside the closet. See Exhibits 9, 10, 11 and 12.

Exhibit 11 shows the items seized including a cut-off shotgun, two AK-47, two rifles, ammunition and magazines.

PRPO Bari found on Defendant's person the pistol he had seen before and the keys to the stolen Toyota Corolla in one of his pockets. PRPO Bari went to the stolen car with the beeper and the keys and they both worked. PRPO Bari did not search any other bedroom at that time.

Technical Services arrived at the location and an inventory was done. PRPO Bari gave the keys of the property to a neighbor, as instructed by Defendant. Some family members arrived and locked the house.

The Toyota vehicle was searched because it was a stolen vehicle which was recovered. The proper form was filled out. Two magazines and 22 rounds were seized from the interior of the vehicle.

Case 3:18-cr-00122-DRD   Document 56   Filed 01/09/19   Page 10 of 19

United States of America v. Jasael Figueroa-Figueroa
Civil No. 18-122 (DRD)
Report and Recommendation
Page 10
_____

Defendant Figueroa was taken to the PRPD Headquarters in Bayamón. Defendant was presented with the Miranda Warnings form in writing, a consent form and the inventory sheet. Defendant refused to sign the documents. See Joint Exhibit I.

Exhibit 13 is the inventory of the Toyota Corolla.

Exhibit 14 is a photograph of the evidence which was found on Defendant's person, to wit, a Glock pistol, a loaded magazine which was inside the pistol and two cellular phones.

On cross-examination, PRPO Bari testified that Defendant Figueroa never ran and did not threaten the police officers. The house was not on fire and PRPO Bari did not hear anyone screaming. PRPO Bari had never met Defendant Figueroa before.

Testimony of PRPO González:

PRPO González testified that on February 23, 2018, he was on duty with the PRPD. PRPO González was on an undercover vehicle with PRPO Bari and Sgt. Rivera at San José Ward in Toa Baja. PRPO González was there as part of an anti-crime plan doing preventive rounds. PRPO Bari ran the license plate of a Toyota Corolla vehicle which came back as stolen. They stayed back waiting for back up. Other officers went door to door speaking with the residents trying to identify the owner of the Toyota Corolla. PRPO González stayed surveilling the perimeter per instructions of Sgt. Rivera. Then, PRPO González heard PRPO Bari identify himself as police and then said, "raise your hands." Sgt. Rivera was close to PRPO Bari and came out and said that an armed subject was inside. Sgt. Rivera asked PRPO González to keep watching the perimeter. PRPO González followed the instructions.

Case 3:18-cr-00122-DRD   Document 56   Filed 01/09/19   Page 11 of 19

United States of America v. Jasael Figueroa-Figueroa
Civil No. 18-122 (DRD)
Report and Recommendation
Page 11
_____

## LEGAL ANALYSIS

**A.    Police Officers lawfully reached their vantage point.**

As properly argued by the Government, the police officers approached the exterior of Defendant Figueroa's residence while investigating a stolen vehicle. It is well settled that "[p]olice may approach citizens in public spaces and ask them questions without triggering the protections of the Fourth Amendment." United States v. Young, 105 F.3d 7, 9 (1st Cir. 1994). Police need not justify such encounters by articulable suspicion of criminal wrongdoing or by any other standard. *Id.* ("Such police engagements need not find a basis in any articulable suspicion."). A similar standard applies to officers approaching and knocking on the front door of a residence without a warrant. The Supreme Court has held that a police officer not armed with a warrant may approach a home and knock, precisely because that is "no more than any private citizen might do." Florida v. Jardines, 569 U.S. 1, 133 S. Ct. 1409, 1415 (2013). Additionally, law enforcement officers need not "shield their eyes" when passing by the home on "public thoroughfares." California v. Ciraolo, 476 U.S. 207, 106 S.Ct. 1809, 1812 (1986).

In the case at bar, PRPD officers were in the area on a routine patrol. During the patrol, officers observed a vehicle that was believed to be stolen. Upon further investigation, officers confirmed that the vehicle had been reported stolen. Accordingly, the officers began canvassing the neighborhood to learn additional information and, as part of this canvas, they approached and knocked on Defendant's front door which was ajar. Then, the PRPO Bari saw, through the glass door, that Defendant Figueroa was armed.

United States of America v. Jasael Figueroa-Figueroa
Civil No. 18-122 (DRD)
Report and Recommendation
Page 12
_____

### B.     Warrantless Arrest.

A warrantless arrest is constitutionally valid if, at moment the arrest is made, officers have probable cause to make it; that is, if at that moment, facts and circumstances within their knowledge and of which they had reasonably trustworthy information are sufficient to warrant a prudent man in believing that the arrestee had committed or was committing an offense.  United States v. Ayres, 725 F.2d 806 (1st Cir. 1984); United States v. Young, 105 F.3d at 6 (same).  Whether there is probable cause for a warrantless arrest is determined under an objective standard, not by inquiry into officers' presumed motives.  *Id.*

Probable cause "is a practical, nontechnical conception offering an acceptable compromise between competing societal interests in protecting citizens on the one hand from abusive interferences with privacy and unfounded charges of crime, and on the other hand in recognizing the necessity to afford 'fair leeway for enforcing the law in the community's protection." Brinegar v. United States, 338 U.S. 160, 176, 69 S.Ct. 1302, 1311 (1949).

A warrantless arrest requires probable cause, the existence of which must be determined considering the information that law enforcement officials possessed at the time of the arrest. See United States v. Diallo, 29 F.3d 23, 25 (1st Cir. 1994).  To establish probable cause, the Government "need not present the quantum of proof necessary to convict." United States v. Uricoechea-Casallas, 946 F.2d 162, 165 (1st Cir. 1991); United States v. Meade, 110 F.3d 190, 193 (1st Cir. 1997).

The inquiry into probable cause focuses on what the officer knew at the time of the arrest, United States v. Brown, 169 F.3d 89, 91 (1st Cir. 1999) and should evaluate the

Case 3:18-cr-00122-DRD   Document 56   Filed 01/09/19   Page 13 of 19

United States of America v. Jasael Figueroa-Figueroa
Civil No. 18-122 (DRD)
Report and Recommendation
Page 13
_____

totality of the circumstances. United States v. Reyes, 225 F.3d 71, 75 (1st Cir. 2000). "[P]robable cause is a common sense, nontechnical conception that deals with the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." Meade, 110 F.3d at 198 n. 11; United States v. Vongkaysone, 434 F.3d 68, 73 (1st Cir. 2006).

It is unquestioned that when a defendant is arrested, he may be searched both for evidence of his crimes and for the safety of the officers. "It is also well established that the defendant's lawful arrest permits the police to search his person . . ." United States v. Fiasconaro, 315 F.3d 28, 37 (1st 2002). See also United States v. Doward, 41 F.3d 789, 792-93 (1st Cir. 1994). "[I]t is settled beyond peradventure that a search of an individual's person made incident to a valid arrest is itself valid, despite the absence of an arrest warrant." United States v. Winchenbach, 197 F.3d 548, 552 (1st Cir. 1999).

Turning to the instant case, PPRO Bari's uncontested testimony shows that he personally saw, when approaching the glass door of the house, Defendant Figueroa carrying a firearm on his waistband readily accessible and near the officer. PRPO Bari asked Defendant Figueroa if he had a license to carry the firearm to which he answered in the negative. Possession of a firearm without a license is a violation of Puerto Rico Law.

As properly raised by the United States, the First Circuit has found that "Puerto Rico is a concealed-carry jurisdiction." United States v. Avilés-Vega, 783 F.3d 69, 73 (1st Cir. 2015); *see also* United States v. Padilla-Colón, 578 F.3d 23, 25 n. 1 (1st Cir. 2009) ("The visual display of a firearm is a crime under Puerto Rico law." (*citing* P.R. Laws Ann. tit. 25, § 456a(d)(1))). "That means that an individual must carry a firearm in a concealed manner even if he or she possesses a license to carry the firearm." Avilés-Vega, 783 F.3d

United States of America v. Jasael Figueroa-Figueroa
Civil No. 18-122 (DRD)
Report and Recommendation
Page 14
_____

at 73 (citing P.R. Laws Ann. tit. 25, § 456a(d)(1)). Therefore, an individual who visually displays a firearm violates Puerto Rico Law even if he possesses a firearms permit. *Id.*

Accordingly, the law enforcement officers had probable cause to arrest Defendant Figueroa.

It is worth noting that Defendant Figueroa did not take the stand during the suppression hearing, to contradict the testimony of PRPO Bari, even though he had the opportunity to do so. No other documentary evidence or testimonial evidence was presented by Defendant Figueroa on the merits and in support of his motion to suppress, but for the testimony of his wife which was presented solely for the standing issue. As such, the testimony of PRPO Bari, as corroborated in part by the testimony of PRPO González, as to how the facts developed the night of Defendant Figueroa's arrest, are uncontested.

Considering the above, the Court finds that Defendant Figueroa's warrantless arrest was legal and based on probable cause. Accordingly, suppression fails on this ground.

**B**.    **Warrantless Search of Home.**

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. To prevail on a claim that a search or seizure violated the Fourth Amendment, a defendant must show as a threshold matter that he had a legitimate expectation of privacy in the place or item searched. Minnesota v. Olson, 495 U.S. 91, 95, 110 S.Ct. 1684 (1990). The inquiry involves a two-part test: first, whether the defendant had an actual, subjective, expectation of privacy; and second, whether that

Case 3:18-cr-00122-DRD Document 56 Filed 01/09/19 Page 15 of 19

United States of America v. Jasael Figueroa-Figueroa
Civil No. 18-122 (DRD)
Report and Recommendation
Page 15
_____

expectation "is one that society is prepared to recognize as objectively reasonable." United States v. Battle, 637 F.3d 44, 48-49 (1st Cir. 2011); United States v. Rheault, 561 F.3d 55, 59 (1st Cir. 2009) (*citing* Smith v. Maryland, 442 U.S. 735, 740-41, 99 S.Ct. 2577 (1979)).

Proof of valid consent to search requires that the prosecution show, by a preponderance of the evidence, that the consent was knowingly, intelligently, and voluntarily given. United States v. Marshall, 348 F.3d 281 (1st Cir. 2003).

A warrantless search does not offend the Fourth Amendment when it is properly circumscribed and stands on a voluntary consent given by a person so authorized. United States v. Chaney, 647 F.3d 401, 405-06 (1st Cir. 2011). "Consent is voluntary if it is 'the product of an essentially free and unconstrained choice.'" United States v. Chhien, 266 F.3d 1, 7 (1st Cir. 2001) (*quoting* Schneckloth v. Bustamonte, 412 U.S. 218, 225, 93 S.Ct. 2041 (1973)). In determining voluntariness, the focus is often on whether the individual's will have been overborne and his capacity for self-determination critically impaired. *See* Schneckloth, 412 U.S. at 225, 93 S.Ct. 2041; United States v. Calderón, 77 F.3d 6, 9 (1st Cir.1996).

Determining whether an individual's consent was indeed voluntary or instead the product of coercion requires a highly fact-specific inquiry dependent upon a careful scrutiny of the totality of the circumstances, rather than on a mechanical application of legal factors to a factual scenario. *See* United States v. Brake, 666 F.3d 800, 806 (1st Cir. 2011) United States v. Vanvliet, 542 F.3d 259, 264 (1st Cir. 2008); Marshall, 348 F.3d at 286. The common list of relevant fact drives for assessing whether consent was voluntary includes the person's "age, education, experience, knowledge of the right to withhold consent, and evidence of coercive tactics." Chaney, 647 F.3d at 407 (internal quotation

United States of America v. Jasael Figueroa-Figueroa
Civil No. 18-122 (DRD)
Report and Recommendation
Page 16
_____

marks omitted); see United States v. Vanvliet, 542 F.3d 259, 264 n. 2 (1st Cir. 2008) (listing range of pertinent factors). While "there is no requirement that the person who gave consent must have been explicitly advised of the right to withhold it," valid consent requires "more than mere acquiescence in the face of an unfounded claim of present lawful authority." United States v. Pérez-Montañez, 202 F.3d 434, 438 (1st Cir. 2000) (*citing* Schneckloth, 412 U.S. at 234, 93 S.Ct. 2041 and Bumper v. North Carolina, 391 U.S. 543, 548, 88 S.Ct. 1788 (1968)); *see also* Ohio v. Robinette, 519 U.S. 33, 40, 117 S.Ct. 417 (1996); Chaney, 647 F.3d at 407-08; Vanvliet, 542 F.3d at 264.

Further considerations include whether the party was advised of his constitutional rights or whether the consent was obtained by coercive means. United States v. Dunbar, 553 F.3d 48, 57 (1st Cir. 2009).

As to the validity and scope of Defendant Figueroa's consent, we find that it was valid. It is axiomatic that officers must ordinarily procure a warrant before searching a locale to which Fourth Amendment protections apply. *See* Groh v. Ramírez, 540 U.S. 551, 558-59, 124 S.Ct. 1284 (2004). Several exceptions to this requirement exist, however, one of which is valid consent to search by someone having authority to give consent. *See* Pérez-Montañez, 202 F.3d at 438.

For a consent to be valid, the Government must prove by a preponderance of the evidence that the consenting party gave it freely and voluntarily. Marshall, 348 F.3d at 285-86. The assessment of whether consent is free, and voluntary is a question of fact that requires an examination of the totality of the circumstances surrounding the relevant transaction between law-enforcement authorities and the consenting party. Pérez-Montañez, 202 F.3d at 438.

Case 3:18-cr-00122-DRD   Document 56   Filed 01/09/19   Page 17 of 19

United States of America v. Jasael Figueroa-Figueroa
Civil No. 18-122 (DRD)
Report and Recommendation
Page 17
_____

PRPO Bari's testimony as to Defendant Figueroa voluntarily taking him to a bedroom in the house and showing him the illegal items is uncontested. Defendant Figueroa did not take the stand to contradict Bari's testimony that he verbally consented. Defendant did not present any evidence to show that the consent he gave was not intelligent and knowing.

The fact that Defendant Figueroa later at the Police Headquarters refused to sign the consent form does not vitiate the verbal consent he gave while at the house. See Joint Exhibit I. *See* United States v. Thompson, 876 F.2d 1381, 1384 (8th Cir. 1989) (holding that a defendant's refusal to sign a written consent form—even contemporaneously to the oral consent—was not sufficient grounds for suppression). When weighed against the complete lack of evidence showing coercion and manipulation a later refusal to sign a consent to search is not *per se* evidence of a lack of consent to the search. *See*, e.g., United States v. Jones, 523 F.3d 31, 38 (1st Cir. 2008) (consent provided after "some ten to fifteen government agents, guns drawn, entered [the defendant's] hotel suite without knocking, handcuffed him, placed him in a separate room, and proceeded to interrogate him" not coerced); United States v. Barnett, 989 F.2d 546, 555 (1st Cir. 1993) (consent provided after defendant "was met at the door of his home by seven or eight law enforcement officers, with guns drawn," was "arrested and handcuffed," and was "advised ... of his *Miranda* rights" not coerced).

The evidence in this case shows that, after Defendant Figueroa was arrested for illegal possession of a firearm and being provided with the Miranda Warnings, Defendant told the police officers that there were more firearms in the house. Defendant willingly took PRPO Bari to the bedroom where the additional firearms were located.

Case 3:18-cr-00122-DRD Document 56 Filed 01/09/19 Page 18 of 19

United States of America v. Jasael Figueroa-Figueroa
Civil No. 18-122 (DRD)
Report and Recommendation
Page 18
_____

Importantly, it is uncontested that Defendant was provided with the Miranda warnings immediately when he was arrested. Defendant did not contest in his Motion to Suppress nor in his testimony that he was provided the Miranda warnings upon his arrest.

Moreover, no allegations of coercion were included in the Motion to Suppress and no evidence to that effect was presented at the suppression hearing. No evidence was offered either of Defendant being threatened or coerced; having a diminished mental capacity or disability; being incompetent at the time or being under the influence of drugs or alcohol when he gave the consent to search.

In view of the foregoing, the Government has met its burden by preponderance of the evidence that Defendant's consent to search of his house was both knowing and voluntary.[2]

## CONCLUSION

Wherefore, it is recommended to the Court that Defendant Figueroa's Motion to Suppress (Docket No. 25) be DENIED.

IT IS SO RECOMMENDED.

The parties have fourteen (14) days to file any objections to this report and recommendation. Fed. R. Crim. P. 59 (b)(2). Failure to file same within the specified time waives the right to appeal this order. Henley Drilling Co. v. McGee, 36 F.3d 143, 150-151 (1st Cir. 1994); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir.1986); *see also* Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985, 991 (1st Cir. 1988)

---

[2] The warrantless search of the house was justified based on Defendant's consent. As such, the Court does not need to discuss the exigent circumstances exception.

("Systemic efficiencies would be frustrated and the magistrate's role reduced to that of a mere dress rehearser if a party were allowed to feint and weave at the initial hearing, and save its knockout punch for the second round.").

In San Juan, Puerto Rico, this 9th day of January of 2019.

>S/ CAMILLE L. VELEZ-RIVE
>CAMILLE L. VELEZ-RIVE
>UNITED STATES MAGISTRATE JUDGE