**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| *Plaintiff,* | **CRIMINAL NO. 18-122 (DRD)** |
| v. | |
| **JASAEL FIGUEROA-FIGUEROA,** | |
| *Defendant.* | |

**OPINION AND ORDER**

*"The Fourth Amendment and the personal rights it secures have a long history. At the very core stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion."*
    -Hon. Potter Stewart, Associate Justice of the United States Supreme Court (1958-1981)

Pending before the Court is defendant, Jasael Figueroa-Figueroa's *Motion to Suppress Physical Evidence and Statements* (Dkt. No. 25).[1] The United States filed its respective response in opposition thereto. <u>See</u> Dkt. No. 41. The Court referred this matter for Report and Recommendation to Honorable Magistrate Judge Camille Vélez Rivé. <u>See</u> Dkt. Nos. 35 and 36. Accordingly, the Magistrate held a Suppression Hearing on November 7, 2018. Then, on January 9, 2019, the Magistrate entered a *Report and Recommendation* regarding the defendant's motion to suppress. <u>See</u> Dkt. No. 56. On January 17, 2019, the defendant filed *Objections to Report of Recommendation.* <u>See</u> Dkt. No. 57.

---

[1] A *Supplement to Post-Hearing Brief* was subsequently filed by the defendant submitting additional authorities. <u>See</u> Dkt. No. 77. The Government requested that the supplemental motion be stricken from the record as untimely. <u>See</u> Dkt. No. 79. The Court, in the best interest of justice, decided not to strike the supplemental motion as it found that "there is a potential Fourth Amendment issue that must be properly analyzed and ruled upon." <u>See</u> Dkt. No. 80. The Government was then given additional time to properly oppose to the defendant's supplemental brief. Yet, no opposition was filed. <u>See Id.</u>

After carefully evaluating the Magistrate's report and recommendations and the defendant's objections thereto, the District Court considered "the testimony of PRPD Agent Carlos Bari Martínez [was] ambiguous as to his entrance to the residence of the defendant on the date of the events." Dkt. No. 62 at 1. Therefore, the District Court held a *De Novo* Suppression Hearing directed for the Government to "clarify the facts surrounding [Agent Bari's] entrance to the defendant's property on February 23, 2018 while on the preventive round at Toa Baja, Puerto Rico. Id. at 2. With the benefit of Agent Bari's testimony and the parties' subsequent briefs as to this issue, see Dkt. Nos. 74, 75 and 77, the Court is now duly briefed and ready to rule on the instant matter.

## I.  REFERRALS TO MAGISTRATE JUDGES

The Court may refer dispositive motions to a United States Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). *See* Local Rule 159; *Matthews v. Weber*, 423 U.S. 261 (1976). Any party may contest the Magistrate Judge's report and recommendation by filing its objections. Fed. R. Crim. P. 59(b); 28 U.S.C. § 636(b)(1). A District Judge has various statutory conditions to follow when a Report and Recommendation has been challenged. "A judge of the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." Id. "Absent objection, . . . [a] district court ha[s] a right to assume that [the affected party] agree[s] to the magistrate's recommendation." *Templeman v. Chris Craft Corp.*, 770 F.2d 245, 247 (1st Cir. 1985), *cert denied*, 474 U.S. 1021 (1985). Further, "failure to raise objections to the Report and Recommendation waives that

party's right to review in the district court and those claims not preserved by such objections are precluded upon appeal." *Davet v. Maccarone*, 973 F.2d 22, 30-31 (1st Cir. 1992); *see Henley Drilling Co. v. McGee*, 36 F.3d 143, 150-51 (1st Cir. 1994) (holding that objections are required when challenging findings actually set out in a magistrate's recommendation, as well as the magistrate's failure to make additional findings); see also Lewry v. Town of Standish, 984 F.2d 25, 27 (1st Cir. 1993) (stating that "[o]bjection to a magistrate's report preserves only those objections that are specified"); Borden v. Sec. of H.H.S., 836 F.2d 4, 6 (1st Cir. 1987) (holding that appellant was entitled to a de novo review, "however he was not entitled to a de novo review of an argument never raised").

In order to accept unopposed portions of the Magistrate Judge's report and recommendation, the District Court need only satisfy itself that there is no "plain error" on the face of the record. See Douglass v. United Servs. Auto, Ass'n, 79 F.3d 1415, 1419 (5th Cir. 1996) (*en banc*) (extending the deferential "plain error" standard of review to the legal conclusions of a magistrate judge that were not objected to); see also Nettles v. Wainwright, 677 F.2d 404, 410 (5th Cir. 1982) (*en banc*) (appeal from district court's acceptance of a magistrate judge's findings that were not objected to was reviewed for "plain error"); see also Nogueras-Cartagena v. United States, 172 F.Supp. 2d 296, 305 (D.P.R. 2001) (finding that the "Court reviews [unopposed] Magistrate's Report and Recommendation to ascertain whether or not the Magistrate's recommendation was clearly erroneous") (adopting the Advisory Committee note regarding Fed. R. Civ. P. 72(b).

Thus, the Court shall conduct *de novo* review of the objected portions of the report and recommendation while using the aforementioned "plain error" standard for the portions that have not been objected to.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

On February 23, 2018, the Puerto Rico Police Department (hereinafter, "PRPD") Agent, Carlos Bari-Martínez was on duty at the Bayamón Stolen Vehicles' Division. See Dkt. No. 56 at 7. He was assigned to conduct preventive rounds at San José Ward in Toa Baja and was accompanied by Sergeant Félix Rivera and Alexander González. Id. While at 16th Street, also known as "Valle Seco", PRPD observed a four-door, black Toyota Corolla, with license plate number IRS-191. Id. at 7-8. As several weeks prior, a message had been sent by the command center that some individuals in a car that fit said description were committing crimes at shopping centers in the area, PRPD reported the plate of the black automobile through a portable radio to the police command center. Id. The license plate had a notice that the vehicle was in fact stolen. Id. As a result thereof, Sgt. Rivera instructed PRPD Bari to wait for a marked police unit to arrive. Id.

Thereafter, PRPD Bari performed a visual inspection of the automobile noticing that the locks nor the ignition were forced. Id. Thus, it was reasonable to conclude that the occupant of the car had the key of the stolen vehicle in his possession. Id. Accordingly, PRPD Bari proceeded to conduct a canvas of the area via a house to house and inquiry as to the possessor of the keys of the stolen vehicle. Id. However, no one had information related to the person associated with vehicle. Id.

He eventually approached a property to the far-left of the ward that has a semi-open door.[2] Id. PRPD Bari identified himself. A male came from the interior right side of the property and stood in front of the glass door from the inside. Id. PRPD Bari opened the door to the defendant's property. Immediately after PRPD Bari opened the door, he observed the defendant had a black pistol in his waistband. He inquired the defendant as to the license to carry the firearm or lack thereof. Id. The defendant told PRPD Bari that he did not possess a license, thus, PRPD Bari proceeded to occupy the firearm and placed it on his waistband. Id. PRPD Bari then proceeded to arrest the defendant and provided him his Miranda warnings. Id.

Thereafter, the defendant was asked whether he was alone at the property for safety reasons. Id. at 9. He responded in the affirmative. Id. PRPD Bari then asked the defendant whether there were any additional firearms in the property, and he responded in the affirmative. Id. Accordingly, when inquired as to the location of the firearms, the defendant informed PRPD Bari that the firearms were in the bedroom. Id. PRPD Bari inquired as to the voluntariness of the defendant showing him where the firearms were, and the defendant consented. Id. Then, the defendant proceeded to show PRPD Bari an armory inside the bedroom including drugs, paraphernalia, as to narcotics, together with bullets. Id. The items seized include a cut-off shotgun, two AK-47, two rifles, ammunition and magazines. He also seized the gun that was in the defendant's person upon his arrest and the keys to the stolen Toyota Corolla in one of his pockets. Id.; see also Exhibits 9, 10, 11 and 12. The beeper and keys worked on the car. Id. PRPD Bari did not search the other bedrooms then. Id. Whereupon, Technical Services arrived at the

---

[2] According to PRPD Bari, the door was "more or less a foot" open. *Transcript of the De Novo Suppression Hearing*, Dkt. No. 72, p. 22, l. 6.

property and an inventory was performed. Id. Ultimately, the PRPD handed over the keys to a neighbor as was instructed by the defendant prior thereto. Id. Eventually, family members arrived and closed the house. Id. As the Toyota Corolla had been reported stolen and subsequently recovered, the vehicle was searched. Id. The police seized two bullet magazines and 22 rounds from the interior of the Toyota. Id.

The defendant was afterwards taken to the PRPD Headquarters in Bayamón, where he was presented with the Miranda Warnings form in writing, a consent form and the inventory sheet. Id. at 10. The defendant refused to sign the documents. Id.

Thereafter, on February 27, 2018, a district court grand jury returned a Six-Count Indictment against the defendant (Dkt. No. 8) for possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(C)(1)(a)(i); possession with intent to distribute cocaine base, in violation of 21 U.S.C. § 841(a)(1); possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1); possession with intent to distribute marihuana, in violation of 21 U.S.C. § 841(a)(1); possession of a machinegun in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(B)(ii) and; illegal possession of a machinegun, in violation of 18 U.S.C. § 922(o).

The defendant filed a *Motion to Suppress*, (Dkt. No. 25) wherein he moves the Court to suppress all the evidence seized from his home, from his person and his statements. In sum, the defendant contends the entry of the police to his house, the search of his house, the search of his person and his arrest (all done without a warrant) were not lawful because there was no probable cause and no exigent circumstances. Whereas, the Government argues the police

officers entered the house legally based on probable cause to arrest and exigent circumstances. The Government further avers the defendant gave consent to search.

The *Motion to Suppress* was referred to Honorable Magistrate Judge Vélez-Rivé for hearing and Report and Recommendation. The Magistrate is recommending the **DENIAL** of the motion to suppress. See Dkt. No. 56. The Magistrate finds that the PRPD officers lawfully reached their vantage point as they were in the area on a routine patrol. Upon finding the vehicle and confirming it was stolen, the officers began canvassing the neighborhood to learn additional information and, as part of this canvas, they approached and knocked on defendant's front door which was ajar. According to the Magistrate, PRPD Bari, saw, through the glass door, that the defendant was armed.[3] As to the warrantless arrest, the Magistrate Judge concluded that as PRPD Bari asked the defendant whether he had a license to carry the firearm, and the response was in the negative, and the possession of a firearm without license is a violation of Puerto Rico law, probable cause was established. More importantly, an individual who visually displays a firearm violates the Puerto Rico Law even if he possessed a firearms permit.[4] The testimony of PRPD Bari, and corroborating testimony of PRPD González, are uncontested as the defendant did not present witnesses to rebut the government's position. Finally, as to the warrantless search of the home, the Magistrate found the defendant provided valid consent. PRPD Bari's testimony as to defendant voluntarily taking him to a bedroom in the house and showing him the illegal items is uncontested. Thus, defendant willingly took PRPD Bari to the bedroom where additional firearms were located upon his arrest.

---

[3] The District Court found no record that supports this conclusion.
[4] Puerto Rico is a "concealed-carry" jurisdiction. As such, the visual display of a firearm is a crime under Puerto Rico law. See United States v. Padilla-Colon, 578 F.3d 23, 25 (1st Cir. 2009).

### III. *DE NOVO* SUPPRESSION HEARING

It is a well-established fact that "[a] district judge may not reject a magistrate's findings as to the credibility of a witness without hearing the witness testify first-hand." United States v. Hernandez-Rodriguez, 443 F.3d 138, 148 (1st Cir. 2006). In fact, "if the judge does not hear the witnesses his decisions on credibility issues can only be a blind guess, when it intimates that a district judge may not reject a magistrate's findings without hearing the witnesses." United States v. Raddatz, 447 U.S. 667, 701 (1980).

Thus, upon careful examination of the Magistrate's Report and Recommendation and transcript of the proceedings, the Court found that the testimony of PRPD Bari was ambiguous as to the circumstances surrounding his entrance to the defendant's residence on the date of the events. Accordingly, the Court held a *De Novo* Suppression Hearing, wherein PRPD Bari was produced by the Government in order to clarify the facts surrounding his entrance to the defendant's property on February 23, 2018 while conducting a preventive round at Toa Baja, Puerto Rico. With the benefit of PRPD Bari's testimony as well as supplemental briefs filed by the parties, the Court is now ready to rule upon the instant matter.

### IV. LEGAL ANALYSIS

#### A. *Standing*

It is well settled that "the [Fourth] amendment's prohibition against unreasonable searches and seizures extends only to protect those places and interests in which the accused can be characterized as having a legitimate expectation of privacy." United States v. Cruz-Jimenez, 894 F.2d 1, 5 (1st Cir. 1990). In order to make such a demonstration, the defendant must show both a subjective expectation of privacy and that society accepts that expectation as objectively reasonable. United States v. Mancini, 8 F.3d 104, 107 (1st Cir. 1993). The defendant

must demonstrate a privacy expectation in both the item seized and the place searched. United States v. Salvucci, 448 U.S. 83 (1980) ("[W]e must ... engage in a conscientious effort to apply the Fourth Amendment by asking not merely whether the defendant had a possessory interest in the items seized, but whether he had an expectation of privacy in the area searched.")(internal quotations omitted); United States v. Aguirre, 839 F.2d 854, 856 (1st Cir.1988)("Before embarking upon the merits of a suppression challenge, a criminal defendant must show that he had a reasonable expectation of privacy in the area searched and in relation to the items seized.").

During the Suppression Hearing, the Magistrate heard the testimony of the defendant's wife, Coralys Santiago. According to Ms. Santiago, she and the defendant bought the property subject of the instant case on December 19, 2017. See *Transcript of Proceedings, Suppression Hearing, November 7, 2018*, Dkt. No. 53 at 12, l. 13-23. They eventually moved to the property around three (3) months thereafter, as they were fixing the property from damages suffered due to the passing of Hurricane María. See Id., at 13, l. 6-17. As part of the improvements, the defendant placed a new roof on the property. See Id., at 16, l. 2-7. New windows and several additional repairs were performed on the house. See Id. at 26, l. 15-18. Presently, Ms. Santiago lives at said property.[5] Upon the conclusion of Ms. Santiago's testimony, the Magistrate made the following finding:

> "I believe the testimony of Ms. Santiago suffices to establish standing. She has testified that they bought the house, she and the husband, which is the defendant, in December; that they fixed the house for a couple of months.

---

[5] The defendant never lived on the property as he was arrested during the remodeling of the property.

He was arrested in February and she moved sometime in March or April. So I find that there is standing to raise or challenge the suppression, to raise the suppression and challenge the evidence which was seized."

Id. at 35, l. 10-18.

As the Government did not contest the Magistrate's ruling that the defendant, in fact, had standing to challenge the admission of illegal items seized from his own home, and the Court finds that in effect, the defendant has certainly met the requirements for standing, the Court needs not to proceed further as to this issue.

### B.    Fourth Amendment

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. Amend IV. It is hornbook law that the protection conceded by the Fourth Amendment is greater in the privacy of a person's home. To that effect, the Supreme Court has held that,

"The Fourth Amendment protects the individual's privacy in a variety of settings. In none is the zone of privacy more clearly defined than when bounded by the unambiguous physical dimensions of an individual's home—a zone that finds its roots in clear and specific constitutional terms: "The right of the people to be secure in their . . . houses . . . shall not be violated." That language unequivocally establishes the proposition that "[a]t the very core [of the Fourth Amendment] stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion."

Payton v. New York, 445 U.S. 573, 589–90 (1980)(quoting Silverman v. United States, 365 U.S. 505, 511, 81 S.Ct. 679, 683, 5 L.Ed.2d 734)(Emphasis ours).

It is important to note that "the area 'immediately surrounding and associated with the home'—what our cases call the curtilage— [is regarded] as 'part of the home itself for Fourth

Amendment purposes.' " <u>Fla. v. Jardines</u>, 569 U.S. 1, 6 (2013)." In fact, "'[t]he protection afforded [to] the curtilage is essentially a protection of families and personal privacy in an area intimately linked to the home, both physically and psychologically, where privacy expectations are most heightened.'" <u>Collins v. Virginia</u>, 138 S. Ct. 1663, 1670, 201 L. Ed. 2d 9 (2018)(quoting <u>California v. Ciraolo</u>, 476 U.S. 207, 212-213 (1986).

Moreover, the Supreme Court has consistently held that "any physical invasion of the structure of the home, 'by even a fraction of an inch,' [is] too much." <u>Kyllo v. United States</u>, 533 U.S. 27, 37 (2001)(quoting <u>Silverman v. United States</u>, 365 U.S. 505, 512 (1961). In sum, "[n]o invasion of the sanctity of the home can be dismissed as *de minimis*." <u>Loria v. Gorman</u>, 306 F.3d 1271, 1284 (2nd Cir. 2002). Further, the Ninth Circuit addressed the potential expectation of privacy that a resident of a property may have when a police officer opens the screen door when solid door is open, holding that,

> "In the summer, when people leave their solid doors open for ventilation, the screen door is all that separates the inside from the outside. People can get a resident's attention by knocking on the screen door without opening it. Where the solid door is wide open, the screen door is what protects the privacy of the people inside—not just their visual privacy, which it protects only partially, but also their privacy from undesired intrusion. Where the solid door is open so that the screen door is all that protects the privacy of the residents, opening the screen door infringes upon a reasonable and legitimate expectation of privacy. This is what happened here.

> The police cannot breach the reasonable expectation of privacy that people have in their homes without consent or a search warrant, unless one of the exceptions to the search warrant requirement applies. Once the screen door was open and the officers spotted the gun, the legal distance to a justified entry was short indeed. But the gun was not spotted until after the agent opened the screen door. Where the screen door is the only barrier between the inside of the house and the outside, the police cannot open the screen door without consent or some exception. Arellano–Ochoa did not consent."

<u>United States v. Arellano-Ochoa</u>, 461 F.3d 1142-1144 (9th Cir. 2006).

Whereas, the "probable cause" requirement stems of the Fourth Amendment. The Supreme Court has described "probable cause" as a "fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983). "[T]he duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for ... conclud[ing]" that probable cause existed. Id. at 23-39(citing Jones v. United States, supra, 362 U.S., at 271, 80 S.Ct., at 736).

The First Circuit standard as to search warrants provides that "[a] warrant application must demonstrate probable cause to believe that (1) a crime has been committed . . . and (2) enumerated evidence of the offense will be found at the place to be searched . . ." United States v. Feliz, 182 F.3d 82, 86 (1st Cir. 1999). "A finding of probable cause does not demand proof beyond a reasonable doubt. . . it demands proof sufficient to support a fair probability that a crime has been committed and that evidence of that crime is likely to be found within the objects to be searched." United States v. Coombs, 857 F.3d 439, 446 (1st Cir. 2017)(Internal citations omitted). However, the "ultimate touchstone of the Fourth Amendment is reasonableness." Brigham City, Utah v. Stuart, 547 U.S. 398 (2006).

"In assessing whether there was probable cause for a search, '[the First Circuit's] task, like that of the ... district court, is simply to make a practical, common-sense decision whether, given all the circumstances, there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" United States v. Ramirez-Rivera, 800 F.3d 1, 27 (1st Cir. 2015)(quoting United States v. McLellan, 792 F.3d 200, 208 (1st Cir. 2015). Thus, "[t]he government bears the burden of proving the lawfulness of the search." United States v. Lopez, 380 F.3d 538, 543 (1st Cir. 2004). "That burden is heaviest when consent would be inferred to

enter and search a home, for protection of the privacy of the home finds its roots in clear and specific constitutional terms: '[t]he right of the people to be secure in their ... houses ... shall not be violated.' " United States v. Shaibu, 920 F.2d 1423, 1426 (9th Cir. 1990).

For a warrantless arrest, the Fourth Amendment is taken to require "probable cause. . ." Valente v. Wallace, 332 F.3d 30, 32 (1st Cir. 2003). On that note, "the Supreme Court has [established] that probable cause means more than "bare suspicion" but less that what would be needed to "justify ... conviction." Id. (citing Brinegar v. United States, 338 U.S. 160, 175 (1949). In other words, "the quantum of information which constitutes probable cause—evidence which would 'warrant a man of reasonable caution in the belief' that a felony has been committed, must be measured by the facts of the particular case." Wong Sun v. United States, 371 U.S. 471 (1963)(citations omitted).

Conversely, the Supreme Court has consistently held that "the Fourth Amendment to the United States Constitution . . . prohibits the police from making a warrantless and nonconsensual entry into a suspect's home in order to make a routine felony arrest. Payton, 445 U.S. at 575. To that effect, there is "[a] long-settled premise that, absent exigent circumstances, a warrantless entry to search for weapons or contraband is unconstitutional even when a felony has been committed and there is probable cause to believe that incriminating evidence will be found within." Id. at 573.

In the case at bar, PRPD Bari was assigned to perform a preventive round at San José Ward in Toa Baja. Thus, no search warrant was issued prior thereto. Upon his arrival to the area, he identified a vehicle that was thereupon returned with a stolen vehicle lien. As a result thereof, PRPD Bari began canvassing the area by inquiring the residents of the ward the whereabouts of

the owner of the vehicle. None of the residents had information as to the identity of the possessor of the Toyota.

Eventually, PRPD Bari approached a residence that was located to the far-left. The door was "semi-open". *Transcript of the De Novo Suppression Hearing*, Dkt. No. 72, p. 20, l. 20-25 to p. 21, l. 1. According to PRPD Bari, the door was "more or less a foot" open. Id. at p. 22, l. 6. PRPD Bari announced his presence and the defendant emerged from the interior right side of the property (to the left of PRPD Bari) and stood in front of the glass from the inside. However, as the Court found that PRPD Bari's testimony as to what happened thereafter was incomplete, a *De Novo* Hearing was scheduled. The Court explains.

PRPD Bari's testimony before the Magistrate Judge was that "when [PRPD Bari] see[s] [the defendant], and open[s] the door and [he] see[s] him standing there with the pistol, [he] asked [the defendant] if he has a license to carry a gun and he told [PRPD Bari] he didn't." *Transcript of Suppression Hearing*, Dkt. No. 53, p. 50, l. 18-23. As to where PRPD Bari was located when he saw the firearm for the first time, he testified that,

> "Q. Going back a little bit, when you first see him, were you on the outside of the door or were you inside the door?
> A. The first time that I saw him?
> Q. Yes.
> A. Yes, I'm outside the door.
> Q. When you see him with the firearm, are you still standing outside the door?
> A. No, at that point I have entered.
> Q. Okay and when you asked him if he had a firearm's permit, are you still inside?
> A. Yes.
> Q. Okay, so when you arrested him, you were inside the house.
> A. Correct."

Id. at p. 51, l. 18-25 to p. 52, l. 1-7. (Emphasis ours). Subsequently, during the *De Novo* Suppression Hearing, the Court requested clarification as to the circumstances surrounding PRPD

Bari's entrance at the property. PRPD Bari ultimately clarified and testified that he saw the defendant coming from the right side of the property. Thereupon, PRPD Bari opened the door and then, saw the gun as included herein,

> "BY MR. PASSANISI [AUSA]:
> Q. What did you do, if anything, to the door before you saw the pistol?
> A. Well, I opened it.
> Q. <u>You opened the door before you saw the pistol; is that correct</u>?
> A. <u>Yes</u>."

Dkt. No. 72 at p. 22, l. 21-25 to p. 23, l. 2. (Emphasis ours).

As previously discussed, the very core of the Fourth Amendment is the protection of a person's privacy in his own home. Thus, absent exigent circumstances, a warrantless entry to search for weapons or contraband is deemed unconstitutional even when there is probable cause to believe that incriminating evidence will be found at the place being searched. <u>See</u> <u>Payton</u>, 445 U.S. at 573. More importantly, the Supreme Court has emphasized that "any physical invasion of the structure of the home, 'by even a fraction of an inch,' [is] too much." <u>Kyllo</u>, 533 U.S. at 37.

Upon a careful review of PRPD Bari's testimony, the Court finds there was no indication there was probable cause to enter the defendant's property without a warrant before opening the door, as PRPD Bari did not see a potential criminal activity, i.e. the illegal pistol[6], until **after opening the door** and identified a gun in the defendant's waistband. As the Government has failed to raise exigent circumstances that require entry to the defendant's home, a warrant was necessary.

The Court simply cannot overlook the heightened degree of protection to which a person is entitled in the sanctity of their home. Thus, it is safe to conclude that PRPD Bari's act of opening

---

[6] Dkt. No. 72 at p. 22, l. 21-25 to p. 23, l. 2.

the door to the defendant's house without a warrant and without probable cause of criminal activity to do so, was an invasion of the defendant's privacy. However, prior to ruling upon the controversy at hand, the Court deems necessary to evaluate whether the defendant consented to PRPD Bari's entrance to his property, thus, correcting the probable cause deficiency that the Court has identified.

### C.    Consent

The Fourth Amendment prohibits unreasonable searches and seizures. Thus, a warrantless search of a suspect's premises is, *per se*, unreasonable under the Fourth Amendment unless the government shows that the search falls within one of a carefully defined sets of exceptions, such as a valid consent. Florida v. Royer, 460 U.S. 491, 497 (1983); Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973); United States v. Tibolt, 72 F.3d 965, 968–69 (1st Cir.1995), *cert. denied*, 518 U.S. 1020 (1996). Accordingly, the government has the burden of proving whether the consent obtained by the defendant was voluntarily given. See United States v. Mendenhall, 446 U.S. 544, 557 (1980).

To be valid, such consent must be provided by a suspect by either word or act, but the words or conduct must be unambiguous, and the consent must be freely and voluntarily given. Although in some circumstances courts may infer consent from defendant's cooperative attitude, it is the government the one bearing the burden of proof to establish consent. Royer, 460 U.S. at 497; Schneckloth, 412 U.S. at 222 (1973). However, a search conducted pursuant to consent may not exceed the scope of the consent sought and given. Florida v. Jimeno, 500 U.S. 248, 251 (1991); United States v. Donlin, 982 F.2d 31, 33 (1st Cir.1992). Furthermore, the question of voluntariness is one of facts to be determined from the totality of the circumstances. United States v.

<u>Mendenhall</u>, 446 U.S. 544, 557 (1980); <u>United States v. Barnett</u>, 989 F.2d 546, 554–555 (1st Cir.), *cert. denied*, 510 U.S. 850 (1993).

Among the factors that courts have considered in evaluating the voluntariness of the consenting party are: the suspect's age, education, experience, intelligence, and knowledge of the right to withhold consent; whether the person was advised of his constitutional rights; whether permission to search was obtained by coercive means or under inherently coercive circumstances; whether the person was in custody and Miranda Rights have been given; whether the person was told a search warrant could be obtained; and the length and nature of the detention and interrogation. <u>See</u> <u>United States v. Barnett</u>, 989 F.2d at 554–555; <u>United States v. Al–Azzawy</u>, 784 F.2d 890, 895 (9th Cir.1985), *cert. denied*, 476 U.S. 1144 (1986); <u>United States v. Alfonso</u>, 759 F.2d 728, 741 (9th Cir.1985); <u>United States v. Salvador</u>, 740 F.2d 752, 757–58 (9th Cir.1984), *cert. denied*, 469 U.S. 1196 (1985). However, it is important to note that no single factor will, by itself, be conclusive as to the voluntariness of the consent. Further, the question of voluntariness is one of the facts to be determined from the totality of the circumstances.

Finally, as further guidance, the Court recurs to the guidelines established by the Ninth Circuit that enable the trial judge to determine whether effective consent was obtained prior to conducting a warrantless search,

> "It must show that there was no duress or coercion, express or implied. The consent must be 'unequivocal and specific' and 'freely and intelligently given'. There must be convincing evidence that defendant has waived his rights. There must be clear and positive testimony. 'Courts indulge every reasonable presumption against waiver' of fundamental constitutional rights'. Coercion is implicit in situations where consent is obtained under color of the badge, and the government must show that there was no coercion in fact. <u>The government's burden is greater where consent is claimed to have been given while to defendant is under arrest</u>."

<u>United States v. Page</u>, 302 F.2d 81, 83–84 (9th Cir. 1962)(Emphasis ours).

With these legal principles in mind, we now turn to the question of whether Agent Bari received the defendant's consent to enter and search the residence and, if so, whether the consent was voluntarily given.

In the case at bar, PRPD Bari testified that he arrived at the defendant's residence, saw the defendant coming from the right-side of the property and standing in front of the door from the inside. PRPD Bari ultimately opened the door, that was opened only by one (1) foot, identified a pistol in the defendant's waistband after opening the door, and then placed the defendant under arrest and gave him his Miranda warnings. There is no testimony from PRPD Bari that sustains he obtained any sort of consent from the defendant or observed the defendant carrying a firearm prior to opening the door of his residence and putting him under arrest.

When PRPD Bari took the stand for a second time during the *De Novo* Suppression Hearing, he did not clarify as to the consent he obtained from the defendant, or lack thereof, to enter the property prior to identifying the pistol that was apparently on the defendant's waistband. The applicable standard requires the consent to be freely and voluntarily provided by the defendant when entering the property that is not subject to a search warrant. The defendant ultimately informed PRPD Bari the location of the remaining contraband, but after he had been arrested, not before.

The Court finds the defendant's action of standing in front of the door is not an act of a free and voluntary consent. Rather, it is a sign that the defendant is protecting his residence from an uninvited intrusion from a police officer. The Government has failed to identify an act or word that could constitute compliance with the standard of a consent freely and voluntarily given.

Another critical point under the Court's consideration is the consent provided by the

defendant upon his arrest as to the additional contraband that was in the defendant's residence. As to this issue, the long-standing precedent is that,

> "The question whether evidence obtained after an illegal search should be suppressed as the fruit of the poisonous tree depends upon " 'whether, granting establishment of the primary illegality, the evidence to which ... objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.' "

United States v. Finucan, 708 F.2d 838, 843 (1st Cir. 1983)(quoting Wong Sun v. United States, 371 U.S. 471, 488 (1963). In fact, the First Circuit has emphasized that "[s]uch an analysis depends primarily upon weighing the facts in the particular case, and is thus a matter especially suitable for resolution by the district court." Id. at 843 (citations omitted).

Pursuant to the Fourth Amendment protection and long-standing precedent, the Court finds the contraband occupied by the police on the date of the events is fruit of the poisonous tree, as PRPD Bari physically invaded the defendant's property by opening the door of the defendant's residence without consent to do so prior to identifying probable cause to conduct a warrantless search. Notably, the defendant was only cooperative upon his arrest. Thus, the Court is forced to conclude that proper consent was not obtained prior to searching and seizing contraband from the defendant's property.

### C.      Exclusionary Rule

Finally, the Government argues that "[t]he purpose of the exclusionary rule is to 'deter deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence." Along these lines, the Supreme Court has held that,

> "The deterrent purpose of the exclusionary rule necessarily assumes that the police have engaged in willful, or at the very least negligent, conduct which has deprived the defendant of some right. By refusing to admit evidence gained as a result of such conduct, the courts hope to instill in those particular investigating officers, or in their future

counterparts, a greater degree of care toward the rights of an accused. Where the official action was pursued in complete good faith, however, the deterrence rationale loses much of its force."

Michigan v. Tucker, 417 U.S. 433, 447 (1974). (Emphasis ours).

Accordingly, "[i]f the purpose of the exclusionary rule is to deter unlawful police conduct, then evidence obtained from a search should be suppressed only if it can be said that the law enforcement officer had knowledge, or may properly be charged with knowledge, that the search was unconstitutional under the Fourth Amendment." United States v. Peltier, 422 U.S. 531, 542 (1975). "To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system." Herring v. United States, 555 U.S. 135, 144 (2009).

At issue is whether PRPD Bari's decision of opening the door of the defendant's residence without consent and then, identifying a gun in the defendant's waistband is subject to the exclusionary rule. The Court finds that it does and briefly explains. PRPD Bari is a police officer with 20 years of experience, who prior to working at the Office of Intelligence Section of the Local Police Department worked in the City of Bayamon Stolen Vehicles Unit. See Dkt. No. 53, p. 37, l. 5-17; and Dkt. No. 72, p. 5, l. 3-8. The Fourth Amendment protection is a subject that is widely known as it deals with a fundamental right that every person is entitled to. It is very difficult for the Court to believe that PRPD Bari was unbeknown as to the fact that opening the door of a private property without the defendant's consent and without probable cause would constitute a Fourth Amendment violation. The Government, in fact, recognizes that PRPD Bari did not have probable cause to arrest the defendant until he opened the door to the defendant's property and thereafter, saw the firearm for the first time. Thus, "[t]he government [would be] obliged to

justify the arrest by the search and at the same time to justify the search by the arrest. This will not do." <u>Johnson v. United States</u>, 333 U.S. 10, 370 (1948).

Therefore, the Court finds that the PRPD Bari was grossly negligent when intervening with the defendant, and most critical, by opening the door of the defendant's residence without his consent, without a search warrant and without observing a weapon prior thereto that would establish probable cause to enter the property. The Court further notes that PRPD Bari's actions were in clear violation of the defendant's Fourth Amendment right. This is exactly the type of conduct that is considered unlawful police conduct and must be discouraged.

### III. CONCLUSION

The Court finds that the Magistrate Judge's Report and Recommendation correctly concludes that the defendant met the requirements for standing, thus, no plain error was identified. However, upon review of the record at Dkt. No. 72, it is clear that the local police officer opened the door of the defendant's residence and thereafter, saw the weapon on the defendant's waist, hence, the police officer's conduct was unconstitutional in violation of the Fourth Amendment. Accordingly, the Court hereby **ADOPTS in part** the Magistrate's Report and Recommendation and **GRANTS** the Defendant's motion to suppress.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, on this 9th day of July, 2019.

*S/Daniel R. Domínguez*
Daniel R. Domínguez
United States District Judge